Warren McDermott, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

The Daily Corporation, Intervenor.

394

Argued February 2, 1981, before Judges MENCER, CRAIG and PALLADINO, sitting as a panel of three.

*Kenneth S. Siegel, Malis, Tolson & Malis,* for petitioner.

*John Kupchinsky,* Assistant Attorney General, for respondent.

*Mabel Ditter Sellers,* with her, *Francis J. Tarquini, Jenkins, Tarquini & Jenkins,* for intervenor.

OPINION BY JUDGE PALLADINO, July 8, 1981:

This is an appeal from an order of the Unemployment Compensation Board of Review (Board) which denied unemployment compensation benefits to Warren McDermott (Claimant) pursuant to Section 402 (b)(1) of the Unemployment Compensation Law (Law)[1] which provides in pertinent part that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature . . . ." We affirm.

Claimant was last employed as the chief executive officer of the Daily Corporation (Daily). On March 21, 1979, following a private meeting with James Russell, the president and majority shareholder of Daily, Claimant emptied his desk, left the premises, and never reported back to work. Thereafter, the Bureau, now Office, of Employment Security determined that Claimant had voluntarily left his job without cause of a necessitous and compelling nature, and denied benefits. Claimant appealed this determination, and a referee's hearing was conducted on August 10, 1979. Following this hearing, the referee made the following pertinent findings of fact:

2. Claimant was having a continuing dispute with his employer concerning corporate matters and was unhappy with both the owner of the corporation and the controller.

3. Claimant indicated to his last employer that he could not work with the controller of the corporation and would not continue to do so or work for the corporation unless the controller was dismissed.

4. After being informed that the controller would not be dismissed, the claimant never thereafter returned to work.

---

[1] Act of December 5, 1936, P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1).

The referee concluded from these findings that (1) Claimant's failure to return to work constituted a voluntary termination, (2) that Claimant's dispute with the corporation was not a necessitous or compelling reason for terminating employment, and (3) that Claimant was therefore disqualified from receiving benefits by Section 402(b)(1) of the Law. The Board subsequently affirmed and the present appeal followed.

"In a voluntary termination case, the burden of proving a right to compensation rests with the Claimant, and if Claimant asserts that his leaving employment was *not* due to a voluntary termination, the burden of proving that point also lies with him." (Emphasis in original.) *Bowman v. Unemployment Compensation Board of Review,* 49 Pa. Commonwealth Ct. 170, 172, 410 A.2d 422, 423 (1980). Where, as here, the party with the burden of proof did not prevail below, our scope of review is to determine whether the findings of fact are consistent with each other and with the conclusions of law and whether the findings can be sustained without a capricious disregard of competent evidence. *Helsel v. Unemployment Compensation Board of Review,* 54 Pa. Commonwealth Ct. 320, 421 A.2d 496 (1980). The question of whether an employee voluntarily terminated his or her employment or was discharged is one of law. *Rettan v. Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 287, 325 A.2d 646 (1974). Of course, questions of credibility, resolution of conflicts in the evidence presented, and a determination of the weight to be given evidence are matters for the Board to resolve. *Roach v. Unemployment Compensation Board of Review,* 31 Pa. Commonwealth Ct. 424, 376 A.2d 314 (1977).

Before this Court, Claimant alleges (1) that the referee's findings of fact were impermissibly based

on hearsay evidence, (2) that the Board capriciously disregarded competent evidence, (3) that the referee denied him an opportunity to conduct reasonable cross-examination, and (4) that the referee's hearing was conducted in a biased manner. Since we find no merit in these allegations, we will affirm.

At the referee's hearing a summary of interview form was entered into evidence in which Claimant detailed his dissatisfaction with Daily and Davidson, the corporation's controller. Claimant also testified at this hearing as to his recollection of his March 21, 1979, meeting with Russell stating, *inter alia*:

> The morning of March 21st, Mr. Russell came into my office, closed the door. There was just the two of us, and he said Mac, you know that if you're going to sue me you can't stay here and you can't work here any more. I said that is reasonable, why don't you live up to your commitments and there will be no necessity for lawsuits. He said I'm not going to do that, he said, but maybe we can work out a compromise. I said, how can we work out a compromise. The first thing we would have to start with, we would have to get rid of Diane Davidson, as I can't work with a crooked president and a crooked controller working together anyhow. And he got up, shook my hand and said good luck and goodbye.

We believe that this evidence alone was sufficient to support the referee's findings of fact. While hearsay evidence was also presented at the hearing, there is no indication in the record that the referee relied on this evidence in making his findings of fact.

Our review of the record also convinces us that the Board did not capriciously disregard competent evidence. The only evidence offered by Claimant concerning the circumstances surrounding his departure

from Daily was his own testimony noted above. It is clear from the Board's resolution of this case that they did not accept as credible Claimant's allegation that he had been told he could no longer work for Daily. As we have repeatedly held, questions of credibility and the weight to be given evidence are for the Board to resolve, and this Court will not disturb such determinations on appeal. *Hayes v. Unemployment Compensation Board of Review,* 36 Pa. Commonwealth Ct. 49, 387 A.2d 186 (1978); *Roach.*

In addition, Claimant contends that the principal issues in this appeal cannot be properly resolved without the testimony of James Russell, president of Daily. Despite alleging on appeal the importance of Mr. Russell's testimony, in the proceedings below Claimant did not attempt to subpoena Mr. Russell. Moreover, the existing record, although devoid of Mr. Russell's testimony, supports each of the factual findings and legal conclusions necessary in this case.

Finally, we note that there is no evidence in the record indicating that the referee failed to conduct his hearing in an impartial manner. Claimant was afforded every opportunity to present his evidence, and the referee assisted Claimant by questioning the reliability of the evidence offered by Daily's attorney. Although hearsay evidence was entered into the record, the simple admission of this evidence does not mean that the hearing was conducted in a biased manner.

Accordingly, we enter the following

ORDER

AND Now, July 8, 1981, the order of the Unemployment Compensation Board of Review, dated October 18, 1979, Decision No. B-176790, is affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.

AMENDED ORDER

AND Now, this 16th day of July, 1981, the order filed July 8, 1981, in the above-captioned case is hereby amended to read as follows;

AND Now, July 8, 1981, the order of the Unemployment Compensation Board of Review, dated March 31, 1980, Decision No. B-176790-B, is affirmed.