Charles Elliott, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

108

Submitted on briefs December 8, 1983, to Judges
WILLIAMS, JR., BARRY and BARBIERI, sitting as a panel
of three.

*Charles Elliott,* petitioner, for himself.

*Charles G. Hasson,* Acting Deputy Chief Counsel,
with him, *Richard L. Cole, Jr.,* Chief Counsel, for re-
spondent.

OPINION BY JUDGE BARRY, April 27, 1984:
This case is before us on the petition for review of
Charles Elliott (claimant) who was dismissed from his
employment as a revenue examiner for the City of
Philadelphia (employer) because he disclosed confi-
dential tax information to a reporter from the Phila-
delphia Evening Bulletin. The referee found that
claimant's actions constituted willful misconduct un-
der Section 402(e) of the Unemployment Compensa-
tion Law (Law), Act of December 5, 1936, Second Ex.
Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e),

and therefore was ineligible for benefits under the Law. The Unemployment Compensation Board of Review (Board) affirmed the referee's decision.

Claimant's employment as a revenue examiner consisted of auditing business accounts of taxpayers. The results of these audits and the notes made by claimant as he was conducting the audits (work product) were placed in files stamped "confidential". The City of Philadelphia had a policy which prohibited employees from disclosing any confidential tax information to outside sources.[1] At the hearing before the referee, claimant admitted that he was familiar with this pol-

---

[1] The policy of the City of Philadelphia concerning the maintenance of confidentiality of tax returns is set forth in Section 307, of the Department of Collections Policy Memorandum No. DCP-6, termed "Excerpt from the General Section of Regulations promulgated by the Revenue Commissioner:"

An information gained by the Revenue Commissioner or any other official or agent of the City as a result of any returns, investigations, hearings, or verifications required or authorized under sections of the Code applicable to the Department of Collections shall be confidential except for official purposes and except in accordance with proper judicial order or as othewise provided by law, and any person or agent divulging such information shall be subject to fines and penalties as provided under the Code. Thus, the Revenue Commissioner shall refuse to produce tax returns when subpoenaed by a litigant in an action at law between private parties.

A separate provision deals with requests by representatives of the news media:

Requests by representatives of the news media for information related to filed tax returns will be honored only when directed through the office of the Revenue Commissioner and only to the extent of advising whether or not the return in question has or has not been filed; but no information from the return itself will be supplied. The record of the filing of returns is a part of the public record, and therefore the supplying of information with respect to filing or not filing does not relate to the matter of confidentiality.

icy, but contended that the information which he furnished to the newspaper reporter was not confidential.

On several occasions, claimant had accused his supervisors of favoring certain taxpayers and had complained to the Commissioner. As a result of his complaints, an investigation was conducted by the Office of the District Attorney and the Federal Bureau of Investigation. There is some dispute as to whether this investigation was ongoing at the time of claimant's dismissal, although the referee found that "claimant's charges were dismissed as unfounded." Resolution of this disputed fact is not necessary to permit us to reach a determination in this case.

In December of 1981, claimant had an interview with a newspaper reporter from the Philadelphia Evening Bulletin. He disclosed certain confidential tax information and named taxpayers whom he felt were given special consideration.[2] Claimant also charged his supervisors and the Commissioner with malfeasance. The reporter subsequently wrote an article which was printed in the Philadelphia Evening Bulletin regarding the charges made by claimant. When the Deputy Revenue Commissioner learned of claimant's action in disclosing confidential information to the news media, claimant was terminated.

It is axiomatic that the criteria for willful misconduct are: (1) whether claimant evidenced a wanton and willful disregard of the employer's interests and (2) whether claimant disregarded the standards of behavior which an employer can rightfully expect from

---

[2] At the hearing, claimant stated that he also disclosed to the newspaper reporter specific information such as copies of memoranda written by the Deputy Revenue Commissioner, specific information gleaned during audits of certain business taxpayers, and memoranda concerning alleged improprieties on the part of revenue examiners and supervisory personnel.

his employee. *See Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). Where it is alleged that an employee has violated a work rule or policy of his employer, the employer must establish the existence of the rule and the fact of its violation; the employee, if attempting to justify the violation, must prove good cause. *Partsch v. Unemployment Compensation Board of Review,* 64 Pa. Commonwealth Ct. 293, 439 A.2d 1331 (1982). "Obviously, before an employee can be guilty of violating an employer's rule, he has to be made aware of that rule." *Murraysville Telephone Co., Inc. v. Unemployment Compensation Board of Review,* 41 Pa. Commonwealth Ct. 35, 38, 398 A.2d 250, 251 (1979). Our review of the record demonstrates that the employer clearly established the existence of the policy against disclosure of confidential information as well as the fact that claimant, through his own testimony, was familiar with that policy.

Claimant attempts to justify his conduct on the basis that he was acting in the best interest of the taxpaying public by revealing information of which he felt "the public had an absolute right" to be aware. To buttress his contention, claimant cites the Right to Know Act, Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§66.1-66.4. Specifically, he contends that the information which he released to the newspaper reporter falls within the definition of "public record" as set forth in Section 1(2) of the Right to Know Act, 65 P.S. §66.1(2):

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or deci-

sion by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public record" shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

The Right to Know Act, however, is inapplicable to the case at issue, in our opinion, because claimant made a voluntary disclosure. That is, the newspaper did not initiate a request for the information, but merely followed up on claimant's voluntary submission of such information. Section 4 of the Right to Know Act, 65 P.S. §66.4, gives redress to "[a]ny citizen of the Commonwealth of Pennsylvania denied any right granted to him by Section 2 or Section 3 of this act . . . ." This is not the case here. Moreover, as discussed previously, claimant contends that the information released to the newspaper was not confidential because "the City through its personnel department

has provided the information to the Bureau of Employment Security.'' This, obviously, does not change the status of the information. Information released to the Bureau of Employment Security remains internal information surrounded by some confidentiality. Release to a newspaper destroys all semblance of confidentiality. Additionally, Section 1(2) of the Right to Know Act exempts from the term "Public Records'', "any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties . . . .'' Clearly the information released falls within this category.

Affirmed.

ORDER

AND Now, April 27, 1984, the order of the Unemployment Compensation Board of Review, dated June 4, 1982, No. B-206453, is hereby affirmed.