Sonat Marine, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 12, 1985, before Judges DOYLE and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Anthony B. Haller*, with him, *J. Anthony Messina, Pepper, Hamilton and Scheetz*, for petitioner.

*Charles G. Hasson*, Acting Deputy Chief Counsel, with him, *James K. Bradley*, Associate Counsel, for respondent.

OPINION BY JUDGE DOYLE, October 24, 1985:

This is an appeal by Sonat Marine, Inc. (Employer) from an order of the Unemployment Compensation Board of Review (Board) reversing a referee's determination that Gregory Moore (Claimant) was ineligible for benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law),[1] 43 P.S. §802(e), (willful misconduct).

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*.

The referee found that Claimant had been employed as the only cook aboard one of Employer's vessels. At approximately 4:00 a.m. on April 11, 1983, one of the crew members of the *Tug Ranger*, aboard which Claimant had been currently serving, approached Claimant and demanded that Claimant bake biscuits for every meal. As a result of this remark a heated discussion ensued between Claimant and the crew member, which discussion involved an exchange of foul and abusive language. The referee specifically found that Claimant was not threatened with bodily harm. Claimant became emotionally upset as a result of the altercation and left the vessel at 6:30 a.m. when it docked in Philadelphia. Claimant, according to the referee's findings, did not request permission or authorization from the captain or the personnel officer to leave. The referee found that pursuant to company policy (of which the referee determined Claimant was aware) crew members must remain aboard the vessel to which they are assigned until they are relieved or until the personnel department grants permission to leave. Claimant, after disembarking, went home. At approximately 9:00 a.m. he telephoned Employer's personnel office and spoke to one of the representatives. At that time, according to the referee's findings, Claimant was asked if he wanted to return to the vessel to which he responded in the negative. Accordingly, Employer was required to obtain a replacement for Claimant. Claimant was discharged for failing to finish his tour of duty and leaving the vessel without authorization, the latter of which the referee found to be a violation of company policy.

The Board, in reviewing the referee's decision,[2] omitted several findings only four of which are at

---

[2] Subsequent to the referee's decision, the Board ordered a remand and directed that a hearing officer take additional testi-

issue here. Specifically, the Board disregarded the referee's findings 1) that under company policy crew members must remain aboard a vessel until relieved unless permission to leave has been granted by the personnel department, 2) that Claimant was not threatened with harm or bodily injury during the altercation, 3) that Claimant did not request permission to leave the vessel, and 4) that Claimant replied in the negative when asked by a personnel representative whether he wanted to return to the vessel.

In addition the Board made six additional findings as follows:[3]

4. The claimant complained to the captain of the vessel about the situation.

5. The captain said he could not do anything about it but if the claimant wanted to get off the vessel he could do so.

6. The captain actively aided the claimant in leaving the vessel.

7. The claimant left the vessel in order to contact the union and the employer directly about the existing situation.

8. The claimant contacted both parties regarding the situation.

9. The claimant was informed by the employer that the situation would be rectified with the crew member and that he would be able to come back in two (2) weeks.

Based upon its review of the record and its additional findings the Board reversed the referee and held that Claimant had not committed an act of disqualifying willful misconduct.

---

mony because of technical problems in the transcription of a portion of the original hearing.

[3] The Board's power to make the additional findings is not challenged.

On appeal Employer contends that in disregarding the referee's findings the Board violated the limits placed upon it by the Pennsylvania Supreme Court in *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 453 A.2d 960 (1982). Additionally, it argues that Claimant's actions constituted willful misconduct as a matter of law. Preliminarily we note that where the burdened party did not prevail below our scope of review is limited to determining whether there has been a capricious disregard of competent evidence and whether there has been an error of law or a constitutional violation. *McDermott v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 393, 431 A.2d 1140 (1981). And, it is well settled that the Board is the ultimate fact finder. *Drake v. Unemployment Compensation Board of Review*, 80 Pa. Commonwealth Ct. 34, 470 A.2d 1115 (1984); *Gane v. Unemployment Compensation Board of Review*, 41 Pa. Commonwealth Ct. 292, 398 A.2d 1110 (1979). But in *Treon* the Supreme Court restricted the Board's fact finding power when it held that the Board could not simply disregard findings made by a referee which findings were based upon consistent and uncontradicted testimony unless the Board gave its reasons for doing so. Here the Board gave its reasons,[4] although under a literal reading of *Treon*, if the contrary findings are based upon con-

---

[4] The Board stated:

The record in the instant case is replete with conflicting testimony which the Board resolves in favor of the claimant. However, the claimant's testimony is uncontroverted by any competent testimony or evidence that he was given permission by the captain to leave the vessel. That action of leaving the vessel with permission can not be considered a violation of the employer's rule. The claimant is deemed eligible for benefits under the aforementioned Section of the Law.

tradictory testimony it would appear that such reasons are not actually required.

We will first examine the four disregarded findings to see whether contradictory evidence existed with respect to them. The referee's finding relating to the personnel policy is supported by the testimony of Employer's personnel representative. But Claimant testified that he was unaware of any policy on terminating employees who left the vessel and his witness, who had worked for Employer for eleven years, was also uncertain as to any such policy. From this the Board could properly conclude no policy existed (or at least no policy of which the employees were aware) and, so, disregard the referee's finding. Even the Employer's witness testified that she was uncertain whether policies on leave were written down. We would note that where the alleged willful misconduct is the violation of a rule the burden is on the Employer to prove *both the rule and the fact of its violation.* *Teasley v. Unemployment Compensation Board of Review*, 60 Pa. Commonwealth Ct. 428, 431 A.2d 1155 (1981).

The finding that no threat was made by the crew member is uncontradicted. While Claimant testified he feared injury, he also clearly testified that no threats were made to him. Additionally, the reasons given by the Board for disregarding the findings do not relate to this finding. Hence, we reinstate this finding. *Treon.*

As to whether the Claimant requested permission to leave the vessel, the evidence, both pro and con, is based upon inferences. Claimant never testified that he specifically asked for and received permission. The captain never testified at all.[5] As the Board's addi-

---

[5] There was a memorandum admitted into evidence without objection which memorandum was written by a personnel repre-

tional findings indicate it would appear that the captain acquiesced in Claimant's request to leave and although, as noted above, it is true that Claimant, who does not bear the burden of proof, did not specifically testify that he requested and received permission, certainly the Board could infer from the captain's conduct that he had given Claimant permission to leave. We note that on appeal to this Court the party for whom the Board found is entitled to all logical inferences drawn from the evidence. *Hahn Machinery Corp. v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 365, 395 A.2d 651 (1978). Based upon the testimony of record and the *Hahn* rule we are of the view that there was contradictory evidence which would entitle the Board to disregard this finding without violating *Treon.*

The final finding, the omission of which is challenged, relates to whether Claimant, when he was asked if he wanted to return to the vessel, responded in the negative. The referee found that he did so and competent evidence exists to support this. The Board omitted this finding resolving the issue in favor of Claimant who testified that he was told by personnel that everything would be straightened out and he was to come back to work in two weeks. Additionally a personnel representative testified that when asked about going back on the boat (presumably immediately) Claimant said he did not want to go back (not that he *would* not) because he was afraid he

sentative. The memorandum contains an account of what the captain told the representative, *i.e.*, that the captain had not given permission for Claimant to leave. Employer asserts that this is a document falling within the business record exception to the hearsay rule. *See* the Uniform Business Records as Evidence Act, 42 Pa. C. S. §6108. A proper foundation was not laid for this document pursuant to Section 6108 and additionally the document is replete with double and even triple hearsay. We thus reject it.

would physically harm the crew member. The personnel representative further admitted in her direct testimony that she told Claimant that if he felt this way the company did not want him aboard and he should not go back on the boat. Thus the record, taken as a whole, contains evidence that Claimant did not flatly refuse to come back to the vessel and indeed there is evidence that the personnel representative, after hearing his concerns suggested that he not reboard immediately and that he instead prepare to resume his duties in two weeks. Thus, we find contradictory evidence of record which entitles the Board to disregard the referee's findings.

Having determined that except for the finding relating to possible physical harm the Board did not violate *Treon,* we now proceed to examine the Board's findings (including the referee's reinstated finding) to determine whether the Board's determination that no willful misconduct occurred can stand.[6]

Under the Board's analysis Claimant engaged in an argument (but was not threatened) and reported to the captain who maintained he could do nothing with respect to the crew member. The captain then assisted Claimant in leaving the vessel. After leaving the vessel, Claimant contacted the union and the Employer and was told he would be able to return to work in two weeks. Claimant was discharged for failing to finish his tour of duty and leaving the vessel without authority. Under the Board's findings Claimant was relieved of his tour of duty and was permitted to leave the vessel. Thus the Board was correct in concluding that no willful misconduct occurred, and accordingly, their decision is affirmed.

---

[6] Although we could order a remand for the Board to assess the evidence with the reinstated finding we will not do so because the reinstated finding goes to the issue of good cause and, as will be seen, it is unnecessary to reach that issue.

ORDER

Now, October 24, 1985, the order of the Unemployment Compensation Board of Review, No. B-227541, dated February 17, 1984 is affirmed.