BMY, a division of Harsco Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

580

Argued December 9, 1985, before Judges DOYLE and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*John F. Stillmun, III*, with him, *Thomas B. Kenworthy*, Of Counsel: *Morgan, Lewis & Bockius*, for petitioner.

*David P. Shaffalo*, for respondent.

*Lawrence Corson*, with him, *Robert B. B. Schatz*, *Corson & Getson*, for intervenor/respondent, Lucjan Zlotnicki.

OPINION BY JUDGE COLINS, February 3, 1986:

Petitioner, Bowen-McLaughlin-York Company (BMY), seeks review of an order of the Unemployment Compensation Board of Review awarding bene-

fits to its former employee, Lucjan Zlotnicki (claimant). BMY alleges that claimant should be denied benefits on account of willful misconduct in accord with Section 402(e) of the Unemployment Compensation Law (Act).[1]

BMY is a division of Harsco Corporation engaged in defense contracting work, including both general and directed research and development (R & D).[2] Claimant was hired by BMY in October of 1981. During his tenure there, claimant invented a device called a "Four (4)-Bar Bridge Launch Mechanism" for use in the assault phase of a military land vehicle operation which was used by BMY to meet specifications required by a joint U.S.-Israeli military project. An ownership dispute regarding the invention between the parties led to claimant's termination. BMY now alleges that claimant was insubordinate and engaged in willful misconduct resulting in his termination during the course of the dispute and urges that the Board's award of benefits be reversed.

The factual matrix is convoluted from which we have distilled the following. Claimant, a native of Poland, with resident alien status in the United States, was hired by BMY in the fall of 1981 directly out of a teaching post at Spring Garden College. In the summer of 1982, he developed the device and turned it over to his employer. There is some controversy as to whether claimant was part of a team assigned to work on the U.S.-Israeli project and what his designated role was. BMY then asked claimant to sign a contract turning ownership over to BMY of all inventions de-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

[2] General R & D, called "design and development," involves the development of new approaches to a specific or general design problem. Directed R & D, called "support," involves problems of construction and manufacture of a given design or set of specifications.

veloped during the term of employment. Such a contract was normally signed by BMY employees engaged in general R & D, but not by employees engaged in directed R & D. No contract had been presented to claimant at the start of his employment. Claimant did not sign and instead presented BMY with a contract of his own possessing different terms. BMY never signed this agreement. Claimant testified that he had never been assigned to the team working on the U.S.-Israeli project, that he invented the device while working at home, and therefore, believed the invention to be his. Because the claimant did not receive the compensation or promotion he evidently had hoped for in turning over the device to BMY, he continued to claim ownership rights in the device. The company used the device to successfully meet the project specifications of the U.S.-Israeli project and win the Army contract for manufacture.

In February of 1983, claimant did sign the employment contract, allegedly under threats of termination and deportation and allegedly in the subjective belief that the contract would have prospective effect only. He also attached a copy of his alternate agreement, which BMY never signed or honored in any fashion. Within a week or two BMY took steps to patent the device as its own, prompting claimant to patent the device himself and pursue through retained counsel a course of negotiation with BMY regarding the rights to the device. This led to his sudden termination in March of 1983.[3]

The Board found that BMY failed to meet its burden as employer of showing willful misconduct. *See*

---

[3] The termination allegedly was communicated to counsel for claimant who had arrived at BMY for what was supposed to be a negotiation session. Counsel for claimant had allegedly threatened to tell the U. S. Army that the patent for the device was in dispute. Counsel also learned of the existence of a temporary restraining order against claimant at the same time, *see* notes 4 and 5.

*Lake v. Unemployment Compensation Board of Review,* 48 Pa. Commonwealth Ct. 138, 409 A.2d 126 (1979). Where the party bearing the burden of proof does not prevail before the Board, this Court's scope of review is limited to a determination of whether there has been a capricious disregard of competent evidence or whether the Board has committed an error of law. *Dunkle v. Unemployment Compensation Board of Review,* 91 Pa. Commonwealth Ct. 1, 496 A.2d 880 (1985).

BMY contends first that the decision below is in error because the Board capriciously disregarded competent evidence in finding that BMY failed to meet its burden of proof. We disagree.

BMY's witness at the hearing was a Mr. Snodgrass, a vice-president in its employee relations administration department. He was the only witness to testify as to BMY's allegations that claimant was insubordinate; had refused to sign an employee agreement as was required of him; had stolen trade secrets of the employer; had threatened to interfere with a contract between BMY and the Army regarding the device; and had filed a patent as to the device without knowledge of BMY.

The terms and conditions of employment, as well as the legal ownership of the invention, were and are matters of considerable dispute between the parties. In this case, claimant testified that he was assigned to a directed R & D department to make metallurgical calculations for project engineers and was never required to sign a contract regarding ownership rights as invention was not a part of his duties. He further testified that he invented the device on his own and believed it to be his, and that in giving it to the company to use, he expected either compensation or a share in the profits.

The record demonstrates that Snodgrass had no first-hand knowledge of any of the relevant events con-

tended by BMY to have constituted willful misconduct on claimant's part. He had no connection whatsoever with the hiring, supervision, or termination discussions regarding claimant, and only executed a superior's order in actually terminating claimant. His testimony consisted largely of assertions and speculations as to policies in claimant's work department. Aside from Snodgrass, BMY also presented to the referee a transcript of testimony from a preliminary injunction hearing before the Honorable SYLVIA RAMBO, Judge of the Federal District Court of the Middle District of Pennsylvania, held in connection with a separate proceeding involving ownership of the device.[4]

Where the alleged willful misconduct is the violation of a work rule the burden is on the employer to prove both the rule and the fact of its violation. *Sonat Marine, Inc. v. Unemployment Compensation Board of Review,* 92 Pa. Commonwealth Ct. 404, 499 A.2d 718, 721 (1985). The Board, as ultimate factfinder, determines the weight and credibility of the evidence presented to it and is free to reject even uncontradicted testimony. *Swope v. Unemployment Compensation Board of Review,* 91 Pa. Commonwealth Ct. 459, 497 A.2d 289 (1985). Questions of credibility and resolution of conflicts are for the Board, not this Court. *Saxton v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 636, 455 A.2d 765 (1983).

Here, the Board found claimant credible in nearly every respect and resolved conflicts of testimony in his favor. On review, we cannot say the Board in its role as factfinder capriciously disregarded competent evidence. Snodgrass was not competent to testify as to material issues in the proceeding. The claimant and his witness, an attorney who had represented him dur-

---

[4] *Harsco Corp. v. Zlotnicki,* Civil Action No. 83-0384 (M.D. Pa., injunction hearing held April 22, 1983) (Harrisburg, Pennsylvania).

ing the ownership dispute, did not testify in a fashion supporting BMY's version of the events.

BMY, rather than bringing additional witnesses to the referee's hearing, chose to submit the transcript from the federal hearing. Although the transcript was admitted over objections from counsel for the claimant, the mere admission into evidence of the transcript does not bind the referee to believe the transcript or to make the same determinations as did the Federal Judge. Credibility is exclusively within the province of the referee and the Board as factfinder. *Swope; Saxton.* Moreover, the Board was free to make adverse inferences from the fact that the witnesses who testified at the injunction hearing did not testify at the unemployment compensation hearing, and such inferences can be used to weigh the credibility of evidence offered by the party having the burden of proving willful misconduct. *Vann v. Unemployment Compensation Board of Review,* 508 Pa. 139, 145, 494 A.2d 1081, 1084 (1985); *Harring v. Unemployment Compensation Board of Review,* 70 Pa. Commonwealth Ct. 173, 452 A.2d 914 (1982); *Caloric Corp. v. Unemployment Compensation Board of Review,* 70 Pa. Commonwealth Ct. 182, 452 A.2d 907 (1982). Consequently, we cannot find a capricious disregard of competent evidence on the record before us.

BMY next argues that the refusal to sign the ownership agreement and the actions of claimant in patenting the device and retaining counsel were willful misconduct as a matter of law and that the Board erred in this regard. We disagree with this approach. The issue of what specific behavior constitutes willful misconduct, while ultimately a matter of law, must depend in large part on the factual determinations of the Board as factfinder. No authority is cited to us establishing that retaining counsel and patenting an invention while in the employ of a defense contractor is

always willful misconduct as a matter of law. The burden is on the employer to make this showing, and the Board did not err in finding against BMY.

BMY's next contention is that the Board erred in determining that claimant had good cause for his acts. The burden of showing good cause is on the claimant, *Elliott v. Unemployment Compensation Board of Review*, 82 Pa. Commonwealth Ct. 107, 474 A.2d 735 (1984), and the scope of review where the claimant meets that burden is whether the record, taken as a whole, contains substantial evidence to support the Board's conclusion, or whether errors of law were committed. *Swope v. Unemployment Compensation Board of Review*, 91 Pa. Commonwealth Ct. 459, 497 A.2d 289 (1985). *See Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976).

We feel that the Board's finding of good cause was supported by substantial evidence. BMY's argument is that because the Middle District of Pennsylvania issued an injunction in May of 1983, subsequent to claimant's termination in March of 1983, barring him from using the device, and in November of 1984 resolved the ownership dispute in BMY's favor,[5] the claimant, therefore, had no reasonable justification for his actions in disputing ownership of the device and taking the steps of patenting the device and retaining counsel. BMY also argues implicitly that the Board is precluded by principles of *res judicata* and collateral estoppel from making independent findings regarding the matter.

---

[5] *Harsco Corp. v. Zlotnicki*, Civil Action No. 83-0384 (M.D. Pa., injunction order filed May 4, 1983) (R. DIXON HERMAN, J.) ; (M.D. Pa., memorandum opinion filed November 27, 1984) (WILLIAM W. CALDWELL, J.) (granting summary judgment to BMY in declaratory judgment action).

We cannot agree with either line of reasoning. First, the determination of good cause in this case must be assessed from the vantage point of the claimant at the time of his actions. That is the meaning of the test of reasonability and justifiability under the circumstances as outlined in *Frumento,* 466 Pa. at 87, 351 A.2d at 634. At the time claimant was employed by BMY, in late 1982 and early 1983, ownership of the device had not yet been established by a court of law. The question of whether the claimant believed he possessed a colorable claim to ownership was one of fact. This was resolved by the Board in favor of claimant based upon substantial evidence in the record.

Second, the finding of the Federal Court cannot be held to have any *res judicata* or collateral estoppel effect in a separate proceeding involving identical parties where the actions, relief sought, and issues of law are so clearly different. The doctrine of *res judicata* applies only when there is a concurrence of (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Lerner v. Philadelphia Psychiatric Center,* 56 Pa. Commonwealth Ct. 421, 425 A.2d 470, 471 (1981). Likewise, a plea of collateral estoppel may only be entertained if: (1) the issue decided in the prior adjudication was identical with the one presented in the later actions; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *Baker v. Pennsylvania Human Relations Commission,* 75 Pa. Commonwealth Ct. 296, 308, 462 A. 2d 881, 887 (1983), *modified on other grounds,* 507 Pa. 325, 489 A.2d 1354 (1985). In *Baker,* it was held that

absent an *"identical* identity" [sic] of issues, *id.,* the findings of a Federal District Court in a separate proceeding were not binding on an administrative agency. Moreover, it is readily apparent that there was no final adjudication on the merits as of the time of the referee's hearing in June-July of 1983 or the Board's decision in October of 1984, since Judge CALDWELL's order was not handed down until November of 1984.[6] Consequently, the doctrines of *res judicata* and collateral estoppel cannot be held in this case to have precluded the Board from executing its proper factfinding role.

Third, because the required burden of proof in the two proceedings was different, evidence disregarded by the Federal Judge in the contract proceeding could be relied upon by the Board in the compensation hearing. In issuing its orders, the Federal Court relied almost exclusively upon the written contract signed by

---

[6] *See* note 5. We were told by counsel for respondent in his brief and at oral argument that this decision had been appealed to the Third Circuit, but no citation to a docket number or entry of appeal was noted as is required by Pennsylvania Rule of Appellate Procedure 2153. In fact, the Third Circuit has recently affirmed the decision of the Middle District Court. *Harsco Corp. v. Zlotnicki,* No. 85-5149, slip op. (3d Cir. December 17, 1985). In affirming the decision of the trial court, the Third Circuit panel relied exclusively on the written terms of the contract and upon claimant's failure to meet the strict requirements of a duress defense. Consequently, this decision has no preclusive effect on the Board's factfinding for the same reasons set forth in the text. We note also that claimant has a wrongful discharge suit pending against petitioner, docketed at No. 84-0405 (M.D. Pa.).

One crucial point stressed in the Third Circuit's opinion is that BMY proceeded on two theories, one a common-law right, the other a contractual right. The Middle District denied a motion for summary judgment based on the common law right to the device. Thus, claimant was probably justified in assuming that he had colorable title under at least common law principles, so long as the contract could be set aside somehow.

claimant in February, 1982, a month prior to his termination. Affirmative defenses of duress, mistake, and fraud, raised by claimant in the federal proceeding, had to be proven by clear and convincing evidence to bar enforcement of the contract. The Board in a compensation proceeding is not bound by such a strict standard of proof. Such issues need only be raised by testimony or even inferred from a lack of testimony at a Board proceeding or referee's hearing to serve as substantial evidence supporting the Board's findings.[7] Claimant testified before the referee that he signed the February 18, 1983, agreement under threats of termination and deportation,[8] contentions which under the evidentiary standards of a compensation hearing were entitled to weight in the Board's decision, even if they may not have sufficed to persuade the Federal Court to set aside the contract on equitable grounds.[9] Similarly, evidence that claimant had a subjective understanding that the contract was to have prospective effect only, while barred as an affirmative defense in the federal proceeding under classic principles of contract law, is nonetheless relevant at a compensation hearing

[7] To be affirmed on review, the Board need only have relied on substantial evidence and this is a lesser standard than the preponderance and clear and convincing standards. *See Dempsey v. Unemployment Compensation Board of Review*, 92 Pa. Commonwealth Ct. 524, 526, 499 A.2d 740, 741 n.2 (1985). Substantial evidence is correctly defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985).

[8] The employer allegedly threatened not only to terminate him, but also allegedly threatened to jeopardize his status as a resident alien.

[9] Likewise, the determination of guilt or innocence in a criminal proceeding may not be dispositive of the issue of just cause for termination in a civil proceeding. *See Commonwealth v. Joint Bargaining Committee of Pennsylvania Social Services Union*, 82 Pa. Commonwealth Ct. 200, 475 A.2d 1333 (1984).

to show whether claimant had good cause for his actions under the circumstances.[10]

For the above reasons, the Board's decision will be affirmed.

ORDER

AND Now, this 3rd day of February, 1986, the decision of the Unemployment Compensation Board of Review, Decision No. B-235175, dated October 19, 1984, is hereby affirmed.

---

[10] The fact that claimant was terminated so soon after he signed the agreement was certainly relied upon by the Board in adjudging the credibility of the claimant and resolving conflicts in the testimony. Such an action is substantial evidence, one inference from which is that the termination was not the result of claimant's misconduct but the culmination of a premeditated course of action engaged in by BMY to gain all rights to the device and drive claimant from his livelihood.