512 A.2d 1367

Patricia E. Burke, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs April 18, 1986, to Judges MAC-PHAIL, DOYLE and BARRY, sitting as a panel of three.

*Thomas E. Timby, Timby and Dillon, P.C.,* for petitioner.

*Jonathan Zorach,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, August 7, 1986:

This appeal results from an order of the Unemployment Compensation Board of Review (Board) which reversed the decision of a referee granting benefits to the claimant, Patricia E. Burke (claimant).

Claimant was employed, before her separation, as the office manager for her ophthalmologist employer, Dr. Brian Altman (employer). Claimant had worked in this capacity from October, 1982, to September 21, 1984. As found by both referee and Board, claimant was discharged, ostensibly, "because her work performance and attitude toward patients" failed to meet the employer's standards and expectations. In reversing the referee and denying benefits, the Board held that the record supported the employer's allegations that "the claimant was referring patients to other doctors, [was] studying for school while working, and [was] using the xerox machine for personal reasons." *Board Finding of Fact* No. 3.

Undertaking our own review, we are limited to a determination of whether the Board's findings of fact are supported by substantial evidence and whether an error of law was committed. *James v. Unemployment Compensation Board of Review,* 59 Pa. Commonwealth Ct. 230, 233, 429 A.2d 782, 783 (1981). Whether conduct is so egregious as to constitute willful misconduct is, of course, a question of law subject to our review. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 97, 309 A.2d 165, 169 (1973).

In order to substantiate its allegation of willful misconduct, employer testified personally with respect to

claimant's objectionable conduct, and, in addition, obtained testimony to the same effect from two other office workers. Concerning the studying, employer testified that "[s]he would study nursing school on my time and not doing [sic] her job[;] I saw her with her notes for nursing school on two occasions in my office. . . ." (N.T. at 7.) Fellow employees, meanwhile, testified that they heard claimant referring patients to other ophthalmologists. (N.T. at 28, 32-33.) First-hand testimony was also adduced to support the allegation that claimant had been using employer's xerox machine for a part-time employer. (N.T. at 29.)

Our careful review of the record reveals to us little support for the Board's finding that claimant's studying and xeroxing embraced willful misconduct. The employer testified, indeed, that these activities were *tolerated,* apparently in recognition of claimant's general competence and as a matter of courtesy:

[Claimant's attorney]:

[T]hroughout [the] two year period [of claimant's employment], you rearranged your schedule to accomodate [sic] her? Three times?

[Dr. Altman]:

Maybe, maybe more than that.

[Claimant's Attorney]:

Even though you found this thing in the xerox machine?

[Dr. Altman]:

My feeling was finding something in the xerox machine was not reason of itself to fire someone.

. . . .

[Claimant's Attorney]:

And even though you personally saw [claimant studying and saw xeroxed and other material] you rearranged her schedule so that you could accomodate [sic] her to work for you?

[Dr. Altman]:

I felt overall that she was a good worker. [. . . .]

N.T. at 15-16. In short, claimant by way of these activities was not breaching a work rule of the employer, nor otherwise acting in a manner we can say was inimical to the employer's interest. While the testimony in this respect supports a conclusion that the *quality* of claimant's work may have declined, this is clearly not grounds for a finding of willful misconduct. *Compare Elliot v. Unemployment Compensation Board of Review,* 82 Pa. Commonwealth Ct. 107, 111, 474 A.2d 735, 737 (1984) ("Where it is alleged that an employee has violated a work rule or policy of the employer, the employer must establish the existence of the rule. . . ."), *with Younes v. Unemployment Compensation Board of Review,* 78 Pa. Commonwealth Ct. 576, 578, 467 A.2d 1227, 1228 (1983) ("incompetence, inexperience, or inability of an employee will not constitute willful misconduct.").

The record does, however, support the Board's finding of willful misconduct to the extent based on claimant's referral of patients to other ophthalmologists. The first episode, involving what was apparently an emergency workmen's compensation referral, was testified to by employer and another employee:

[Witness Chetalo]:

[Dr. Altman and I] were leaving and I heard her state no[,] he can go to Drs. Miller and Paxon and I turned around and said who, she said nobody nobody and [Dr. Altman] said you are not talking about the emergency, and she said well I. . . . [S]he [then] said oh okay hold on wait a minute and she scheduled him for an appointment.

N.T. at 28. This concededly confused account is reinforced by another employee's testimony:

[The Referee]:
Go ahead, just from you [sic] knowledge. Do you remember any phone conversations?
[Witness Rush]:
Yes I did speak to her on the phone and several times the other phone ran[g] and she would tell me that it was people [who] either wanted surgery or wanted appointments and she had suggested that [they] go to Wills Eye [Hospital] because they would get better care from them.

. . . .

[The Referee]:
Did she express any satisfaction in sending patients elsewhere for surgery?
[Witness Rush]:
Well she felt that they would get better care and it would cost them less money, that the fees were too high, that they didn't get the attention they should.

N.T. at 32-33.

We have little difficulty in concluding that claimant's activity in this regard was manifestly inimical to the employer's interest. The record is replete with testimony that the employer was concerned with the declining business in the office in which claimant worked, and that the latter was aware of that concern. Even in lieu of such a situation, to deliberately refer away an employer's business constitutes a breach of duty which clearly rises to the level of willful misconduct justifying a denial of benefits.

Affirmed.

ORDER

Now, August 7, 1986, the order of the Unemployment Compensation Board of Review, No. B-238082, dated February 19, 1985, is hereby affirmed.