Lucjan ZLOTNICKI, Plaintiff,

v.

HARSCO CORPORATION, and BMY, Defendants.

Civ. A. No. 84–0405.

United States District Court, M.D. Pennsylvania.

Oct. 23, 1987.

Lawrence Corson, Robert B.B. Schatz, Corson & Getson, Philadelphia, Pa., Charles J. Long, Smith, LeCates & Campbell, York, Pa., for plaintiff.

Thomas E. Reinert, Jr., and Thomas Kenworthy, Morgan, Lewis & Bockius, Philadelphia, Pa., for Harsco Corp.

## MEMORANDUM

CALDWELL, District Judge.

### Introduction

Before the court are the parties' cross motions for summary judgment. The plaintiff initiated this action to recover damages resulting from an allegedly wrongful termination of employment. The defendants, by way of counterclaim, seek

to enforce two interim agreements entered into by the parties. For the reasons that follow, the plaintiff's motion for summary judgment will be denied and the defendants' motion for summary judgment will be granted.

*Background*

The following facts are not in dispute. In November, 1981, Bowen–McLaughlin–York ("BMY"), a division of Harsco, hired Zlotnicki as a staff engineer. Harsco generally required each new employee to sign an agreement assigning to Harsco patent rights to any inventions conceived by the employee during and within the scope of employment. At the time BMY hired Zlotnicki, the parties did not discuss the execution of such an agreement, but on at least three occasions, in January and May of 1982 and on February 11, 1983, Harsco representatives requested Zlotnicki to sign one. He refused, objecting to several provisions, including the assignment of rights to inventions without any additional compensation. Zlotnicki eventually signed the agreement on February 18, 1983 under circumstances that led to two lawsuits, this one and *Harsco Corp. v. Zlotnicki*, C.A. No. 83–0384.

In July, 1982 BMY decided to develop a proposal for an assault bridge as requested by the United States Army. Zlotnicki worked on this project and invented a "four-bar bridge launcher" which was incorporated into BMY's proposal. In early February, 1983 Zlotnicki objected to BMY's planned public circulation of the illustrations of his invention claiming that such circulation would invalidate his patent application. On February 11, 1983, BMY officials met with Zlotnicki and told him that they would terminate his employment if he did not sign the standard employment agreement. He reluctantly did so on February 18, 1983.

In March, 1983, Zlotnicki filed a patent application for the launch mechanism and BMY terminated his employment. On March 31, 1983, Harsco filed a complaint seeking a declaratory judgment as to the ownership of the invention. *Harsco Corp. v. Zlotnicki*, C.A. No. 83–0384. At that time, the parties executed an interim agreement that purported to conditionally assign to Harsco all right, title and interest that Zlotnicki might have in the bridge launcher, pending final adjudication of C.A. No. 83–0384. By memorandum and order of November 27, 1984, we held that the standard employment agreement was valid and granted Harsco's motion for summary judgment. On February 13, 1985, we denied Zlotnicki's motion for reconsideration. Zlotnicki appealed and the parties executed a second interim agreement similar to the first. The Court of Appeals for the Third Circuit affirmed in *Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3d Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986).

Meanwhile, on March 23, 1984, Zlotnicki initiated this action in which he asserts that he was wrongfully discharged by the defendants. On May 31, 1984, and again on April 8, 1985, we stayed proceedings in this case pending final resolution of C.A. No. 83–0384. On October 15, 1986, after his Petition for Writ of Certiorari was denied, Zlotnicki filed an amended complaint that alleges: (1) the defendants terminated Zlotnicki's employment in violation of Pennsylvania common law and public policy; (2) the defendants breached a contract; and (3) the defendant's actions constituted a willful, wanton and reckless deprivation of employment. The defendants have filed an answer and a counterclaim based on Zlotnicki's alleged breach of the two interim agreements. Discovery is now complete and we granted the parties leave to file motions for summary judgment. These motions are now ripe for disposition.

In addition to these actions, on February 3, 1986, the Commonwealth Court of Pennsylvania decided *BMY v. Unemployment Compensation Board of Review*, 94 Pa. Commonwealth Ct. 579, 504 A.2d 946 (1986), which concerned Zlotnicki's entitlement to receive unemployment compensation. The court held that Zlotnicki's behavior did not constitute willful misconduct and he was entitled to receive unemployment benefits.

## Discussion

The parties' motions will be assessed under the following, well established standard:

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and must resolve all reasonable doubts as to the existence of a genuine issue of material fact against the movant.

*Hersh v. Allen Products Company, Inc.*, 789 F.2d 230, 232 (3d Cir.1986). We find there to be no genuine issue as to any material fact. The question before us is which party, if any, is entitled to a judgment as a matter of law.

### A. Plaintiff's Claims

The parties agree that one of the main reasons for Zlotnicki's dismissal from employment was his filing of a patent application for the four bar bridge launcher. The defendants contend that Zlotnicki's act constituted a breach of the February 18, 1983 employee agreement, and thus they had good cause for terminating his employment. Zlotnicki claims, on various grounds, that he did not breach any valid agreements and that the filing of the patent application did not amount to good cause for discharge.

A substantial portion of Zlotnicki's argument is devoted to the validity and enforceability of the February 18, 1983 employee agreement. This matter was resolved in C.A. No. 83–0384 and need not be discussed at length now. The agreement is valid and Zlotnicki's restatement of the issues already litigated is irrelevant to the resolution of the motions presently before the court.

■ Zlotnicki contends that the question of breach has been decided in the state unemployment compensation proceedings and that the court is bound by res judicata to grant summary judgment in his favor. Zlotnicki's argument misses the mark, for as the Commonwealth Court wrote in the very case on which he relies:

The doctrine of res judicata applies only when there is a concurrence of (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. Likewise a plea of collateral estoppel may only be entertained if: (1) the issue decided in the prior adjudication was identical with the one presented in the later actions; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*BMY v. Unemployment Compensation Board of Review*, 94 Pa.Commonwealth Ct. 579, 588, 504 A.2d 946, 951 (1986) (citations omitted). The issue decided by the Commonwealth Court is not identical to the issue presented now. In the unemployment compensation proceeding, the questions concerned whether Zlotnicki had good cause for his actions under the circumstances and whether his conduct constituted willful misconduct so as to preclude an award of unemployment benefits. These issues hinged on whether Zlotnicki had a colorable claim to ownership of his invention and the patent rights.

The issue in this case is whether the defendants had good cause to terminate Zlotnicki's employment. That issue was not before the administrative agency or the Commonwealth Court in the unemployment compensation proceedings. The finding in an unemployment compensation case that Zlotnicki had good cause to file a patent application does not bar the conclusion that the same act constituted a breach of contract.

We turn now to the language of the February 18, 1983 agreement which provides, in relevant part, as follows:

In consideration of my employment by Harsco Corporation, together with its subsidiaries and divisions, ("Harsco") and of the further continuation of such employment and of the salary and wages paid to me in connection with such employment, Harsco Corporation and I agree as follows:

1. I will communicate to Harsco promptly and fully all inventions made or conceived by me, either solely or jointly with others, during my employment, which are along the lines of the business, work, or investigations of Harsco or which result from or are suggested by any work I may do for Harsco; and such inventions, whether or not patented, shall be and remain the sole and exclusive property of Harsco or its nominees.

2. I will keep and maintain adequate and current written records of all such inventions at all stages, in the form of notes, sketches, drawings and reports, which records shall be and remain the property of and available to Harsco at all times.

3. I will during and after my employment, without charge to Harsco, but at its expense and request, assist Harsco and its nominees in every proper way to obtain and to vest in it or them title to patents on such inventions in all countries, by executing all necessary or desireable documents, including applications for patents and assignments.

4. Unless authorized in writing, or instructed by Harsco, I will not during or after my employment disclose to others, or use, any of Harsco's inventions or discoveries or its secret or confidential information, knowledge or data which I may obtain during my employment relating to formulae, business methods, processes, machines, manufacturers, or composition, whether or not developed by me.

■ As stated previously in our November 27, 1984 memorandum in C.A. No. 83–0384, the four bar bridge launcher is covered by this agreement. The language of paragraph 1 broadly applies to any invention "conceived by" an employee "during [his] employment which are along the lines of the business ... of Harsco or which result from or are suggested by any work" the employee "may do for Harsco." There is no doubt that Zlotnicki created his invention during the time he worked for Harsco and that it resulted from his work, although he may have spent some of his own time developing it. Furthermore, since the language of the agreement applies to *all* inventions created during Zlotnicki's employment, we rejected his contention that it was to have prospective application only.

The express terms of the agreement clearly grant to the defendants ownership of the invention. It further requires Zlotnicki to assist Harsco to obtain title to the patent. It is undisputed that Harsco asked Zlotnicki to file a patent application for the four bar bridge launcher and that Zlotnicki took at least some of the necessary steps. Disagreement arose between the parties concerning the right to ultimate ownership of the patent and remuneration to Zlotnicki for the invention. Discussions led to the signing of the February 18, 1983 employee agreement, which has been validated by the courts. Zlotnicki then, without Harsco's knowledge, filed a patent application that he prepared on his own. He asserts that the application was his own application for his own patent. This clearly violated the express terms of the employee agreement and constituted good cause for termination.

Zlotnicki contends that his actions were not a breach of contract because the agreement does not prohibit an employee from filing a patent application in his own name, and furthermore, that federal law requires such a result. These assertions are inapposite because although Zlotnicki may have been required by law to file a patent application in his own name, the mere act of filing the application did not motivate Harsco to terminate him. The dismissal resulted from his repeated claims to ownership of the invention, followed by the filing of the application for his own personal benefit. The agreement prohibits an employee

from filing an application for his own account, and Zlotnicki's actions amounted to a material breach.

Zlotnicki also claims that his dismissal was unlawful because the defendants were bound to employ him for a reasonable time after he signed the employee agreement. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 910–11 (3d Cir.1986). Zlotnicki argues that his discharge only one month later amounted to a failure of consideration, thus rendering the agreement unenforceable. This argument is without merit because Zlotnicki breached the agreement prior to his termination and the defendants' obligations were discharged.

### B. *Counterclaim*

During the course of the litigation in C.A. No. 83–0384, and pending final resolution of that matter, Zlotnicki and Harsco executed two interim agreements, conditionally assigning to Harsco, Zlotnicki's rights to the bridge launcher. Harsco paid Zlotnicki $5000.00 upon the condition that if the court determined that Harsco owned the bridge launcher, then Zlotnicki would return the $5000.00 and would execute and deliver an unconditional assignment of the patent. C.A. No. 83–0384 has been finally decided in Harsco's favor, but Zlotnicki has not repaid the $5000.00 or delivered any documents to Harsco.

The April 26, 1985 interim agreement provides, in part:

WHEREAS, a civil action has been initiated by Harsco in the United States District Court for the Middle District of Pennsylvania, Civil Action No. 83–0384 (hereinafter referred to as "the Action"), seeking, *inter alia*, declaratory judgment as to ownership rights and title to the Bridge Launcher; and

WHEREAS, judgment has been entered in United States District Court for the Middle District of Pennsylvania on November 30, 1984 in favor of Harsco; and

WHEREAS, Zlotnicki has filed a Notice of Appeal to the United States Court of Appeals for the Third Circuit which appeal is pending; and

....

WHEREAS, Harsco and Zlotnicki desire to protect whatever rights either party may have to the Bridge Launcher during the pendency of the Action and to insure that the U.S. application for patent on the Bridge Launcher is prosecuted to the full extent in the U.S. Patent and Trademark Office and that corresponding applications for patent on the Bridge Launcher are filed timely and prosecuted fully in selected countries foreign to the United States;

NOW THEREFORE, in consideration of the mutual covenants, conditions and terms hereinafter set forth, Harsco and Zlotnicki, intending to be legally bound, mutually covenant and agree as follows:

1. Zlotnicki shall execute a document, in the form attached hereto as Exhibit "A", conditionally assigning to Harsco his entire right, title and interest in and to the Bridge Launcher.

....

3. Zlotnicki agrees that should it be determined, upon final order of the court that Harsco is the owner of the Bridge Launcher, then Zlotnicki shall, within five (5) days of such final order, but without cost to Zlotnicki, execute and deliver to Harsco an unconditional assignment of his entire right, title and interest in and to the Bridge Launcher in the form attached hereto as Exhibit "C".

....

8. Harsco and Zlotnicki agree that absolute title to any patents in and to the Bridge Launcher shall be ultimately determined by the final order of the court, unless otherwise agreed to by the parties.

9. As used in this Agreement, the term "final order of the court" means a court order finally disposing of the Action and as to which all rights of appeal to any court of higher jurisdiction have been exhausted or waived.

10. Harsco has paid to Zlotnicki the sum of Five Thousand ($5,000.00) Dollars at the signing of the first Interim Agreement upon the condition that if the Court determines in the Action that Harsco is

the owner of the Bridge Launcher, then Zlotnicki shall be obligated upon final order of the court to repay to Harsco the sum of $5,000.00 and such obligation may be reflected in the judgment of the Court. Harsco and Zlotnicki further agree that if, upon final order of the court, Zlotnicki is determined to be the owner of the Bridge Launcher, then Zlotnicki shall have no obligation to Harsco to repay any amounts received from Harsco.

. . . .

15. This Second Interim Agreement shall be in addition to the Interim Agreement executed on the 24th day of February, 1984, which previous Agreement remains in effect.

The February 24, 1984 interim agreement, which was executed before the judgment in C.A. No. 83–0384, contained similar, though not identical, terms.

■ Harsco is entitled to relief under these agreements. The terms are clear and unequivocal. C.A. No. 83–0384 has been decided and it has been determined by final order of the court that Harsco is the owner of the bridge launcher. Furthermore, Zlotnicki admits that the agreements were executed and that he has received $5000.00, has refused to execute and return the agreed upon assignment, has failed to deliver the original patent, and has refused to repay the $5000.00.

As a defense, Zlotnicki argues that he is not bound by these interim agreements because they are based upon the employee agreement which he contends Harsco has breached. This argument is without merit for several reasons. First, Harsco has not breached the employee agreement. Second the interim agreements are based upon the outcome of C.A. No. 83–0384, and not upon the employee agreement. When the court held that Harsco owned the launcher, and Zlotnicki exhausted his appeals, Zlotnicki became obligated to perform as he promised in the interim agreements.

The defendants are seeking attorney's fees pursuant to 42 Pa.C.S.A. § 2503(9) and Fed.R.Civ.P. 11 on the grounds that Zlotnicki's conduct was arbitrary, vexatious or in bad faith. Although Zlotnicki's arguments regarding the defendant's counterclaim lack merit, we do not find that they were interposed for any improper purpose. Therefore, attorney's fees will not be awarded.

*Conclusion*

The material facts in this case are not in dispute and may be summarized briefly. After Zlotnicki invented the four bar bridge launcher, the parties executed an employee agreement conveying ownership of the invention to the defendants. The agreement has been declared by the courts to be valid and enforceable. Despite the agreement's clear terms and his obligations thereunder, Zlotnicki claimed the invention and filed a patent application for his own benefit. At least partly because of those acts, the defendants terminated his employment. Under these facts the defendants are entitled to a judgment as a matter of law. Since Zlotnicki's actions were a breach of the employee agreement, the defendants had good cause to dismiss him.[1]

For the foregoing reasons, the plaintiff's motion for summary judgment will be denied and the defendants' motion for summary judgment will be granted. The defendants' request for attorney fees will be denied.

## JUDGMENT AND ORDER

AND NOW, this 23rd day of October, 1987, upon consideration of the parties' motions for summary judgment, it is ordered that:

1. The plaintiff's motion for summary judgment is denied.

2. The defendants' motion for summary judgment is granted and judgment is entered in favor of the defendants and against the plaintiff in the amount of $5,000.00, plus interest from June 9, 1986, the date the plaintiff's Petition for Writ of Certiorari was denied, and costs.

---

1. Because of our disposition of this matter, we need not address the defendants' claim that good cause was not necessary in order to dismiss Zlotnicki.

3. The defendants' request for attorney fees is denied.

4. The plaintiff shall within five days deliver to Harsco an executed unconditional assignment of his entire right, title and interest in and to the bridge launcher in the form of Exhibit C to the Second Interim Agreement executed April 26, 1985.

5. The Clerk of Court is directed to close this file.