Womeldorf, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent. James F. O'Connor, Intervenor.

Argued May 6, 1981, before Judges CRAIG, MAC-PHAIL and PALLADINO, sitting as a panel of three.

*Estelle F. Comay,* with her *Bernard D. Marcus* and *Jeffrey L. Lewin, Titus, Marcus & Shapira,* for petitioner.

No appearance for respondent.

*Ernest B. Orsatti, Jubelirer, Pass & Intriere,* P.C., for intervenor.

OPINION BY JUDGE CRAIG, June 11, 1981:

Womeldorf, Inc. appeals from a decision of the Unemployment Compensation Board of Review affirming the referee's award of benefits to James F. O'Connor on the ground that he had voluntarily terminated his employment for good cause under Section 402(b)(1) of the Unemployment Compensation Law,[1] 43 P.S. §802(b)(1).

Claimant, a truck driver, last worked for Womeldorf on September 7, 1979. On September 5, 1979, Womeldorf had sent all of its Pittsburgh terminal employees a letter informing them that the Pittsburgh terminal would be closed as of September 9, 1979, but that continuing work would be available "at our Du-Jeff Terminal as of Sunday, September 9, 1979"; the letter requested that employees not desiring reassignment reply by an enclosed form letter stating

> I have received your letter of September 5, 1979 which outlines an offer of a job assignment at your Du-Jeff Terminal commencing Sunday, September 9, 1979.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended.*

I do not desire to accept the assignment and wish to be placed on lay-off status.

which claimant signed and returned.

On September 7, 1979, Womeldorf sent claimant the following letter:

*Re:* VOLUNTARY QUIT—SEPTEMBER 7, 1979

Dear Jim:

On Friday, September 7, 1979 you were issued a work assignment to deadhead *to* our DuJeff Terminal, pick-up trailer number 523 which delivered at Charley Brothers, Greensburg, Pennsylvania at 7:00 A.M., Saturday, September 8, 1979, and refused to accept this work assignment.

You withheld your services on this date without justification. We consider this a voluntary quit, your name has been removed from the seniority roster effective this date.

Womeldorf sent a copy of that letter, without elaboration, to the office of Employment Security as its response to the office's request for separation information.

The office initially denied benefits under the voluntary quit section, Section 402(b)(1); claimant appealed.

On October 18, 1979, notice was mailed to Womeldorf that Referee Mocilac would conduct a hearing on claimant's appeal on October 25, 1979 in Pittsburgh. Womeldorf requested that Referee Mocilac afford it an opportunity to present its testimony somewhere closer to its office in Knox, Pennsylvania, a request which the referee accommodated by scheduling an additional hearing before Referee London in Oil City, Pennsylvania.

Claimant testified at the Pittsburgh hearing; Womeldorf did not appear.

Both parties appeared at the Oil City hearing, at which the evidence focused on pending collective bargaining litigation and on several alleged acts of misconduct by the claimant before his separation. When the hearing closed, Referee London stated that he would return the record to Referee Mocilac for decision. Womeldorf made no objection.

Referee Mocilac concluded that "to remain employed, claimant would either have had to travel daily the distance between Pittsburgh and Knox, Pa. or he would have been obliged to relocate. The commuting distance involved is too far to require an employee to travel in order to maintain his job," and that those circumstances constituted good cause to decline the reassignment.

Womeldorf's appeal to the board asserted that the referee's decision was erroneous because: (1) Womeldorf was denied due process and the right to cross-examine in that it "was not notified of the hearing before the referee [Mocilac] and did not appear at the hearing . . . [so that] the employer has not had an opportunity to present evidence to substantiate its position"; (2) claimant had not quit but had been discharged; and (3) the assignment at Du-Jeff would not have necessitated daily commuting or relocation. The board affirmed the grant of benefits, and this appeal followed; Womeldorf raises those same issues and also asserts that the claimant has not carried his burden of demonstrating cause.

We find no merit in the due process claim. Womeldorf's assertion that it did not have notice of the Pittsburgh hearing is untenable on this record; nothing in the record justified Womeldorf's apparent belief that Referee Mocilac's accommodation of its

own request for a more convenient location "to present its testimony"[2] meant that the Pittsburg hearing was postponed and not merely bifurcated. Moreover, at the beginning of the Oil City hearing, although Referee London stated on the record that Referee Mocilac had conducted a hearing in Pittsburgh on October 25, 1979, Womeldorf did not inquire in any way as to what had then been entered on the record, nor did it request any opportunity to review that record before proceeding. Referee London's capacity as a hearing examiner was again made clear at the close of the Oil City hearing as noted above.

The record thus establishes: (1) that Womeldorf had notice that a hearing was scheduled for October 25, 1979, (2) that Womeldorf was aware that Referee Mocilac had conducted that hearing as scheduled, (3) that Womeldorf was aware Referee London would return the case to Referee Mocilac *to be decided by the latter,* and (4) that Womeldorf made no objection to that procedure. Womeldorf cannot now be heard to complain.

Womeldorf also claims it had no notice that the contest was on a question of a voluntary quit for cause as opposed to a discharge for willful misconduct. This claim also lacks merit.

Womeldorf's own response to the request for separation information, as quoted above, expressly stated that Womeldorf considered claimant's separation a "voluntary quit." The record is clear that, despite pending disciplinary proceedings, claimant remained employed until his last day on September 7,

---

[2] Womeldorf's request was apparently by telephone, and the record therefore contains no documentation of it; the language we quote is from Womeldorf's characterization of the request in its brief.

1979; thus the October 8, 1979 letter of dismissal was inoperative because claimant had voluntarily left Womeldorf's employ on September 7, 1979, by Womeldorf's own account in its letter of that same date. Moreover, at the Oil City hearing, the following exchange took place between Referee London and Womeldorf's witness:

QR: Did the claimant terminate his employment or was he laid off?

AE1: He terminated his employment and he was discharged.

QR: When did the claimant terminate his employment?

AE1: The first instance was September 7, 1979, which is your Exhibit 3(a), etcetera, letter dated September 7.

QR: That is what? What does this letter state?

AE1: Voluntary quit.

QR: That is, the letter that you sent to the claimant, is that correct?

AE1: That's correct.

QR: Stating that since he did not accept the assignment, the new job assignment, job location, that he is considered a voluntary termination?

AE1: That's correct.

Womeldorf thus cannot successfully claim that it had no knowledge that claimant's separation was considered voluntary, when its own evidence substantiates that proposition.

The only question thus remaining is whether the record supports the findings that claimant would have been required to commute an undue distance daily or relocate his residence in order to accept assignment at the Du-Jeff Terminal, and whether that necessity constitutes cause under the law.

Because claimant bore the burden of demonstrating that cause, and has been successful before the unemployment authorities, we must review the evidence in the light most favorable to him, and afford him the benefit of all the inferences which can reasonably be drawn from that evidence.

Claimant's testimony fully supports the finding that distance between Pittsburgh and the Du-Jeff facility was eighty to one hundred miles. As to the necessity of relocation or commuting, the language of the reassignment letter, and of the form claimant was requested to return, supports an inference that such relocation or commuting would be necessary, an inference which also arises from claimant's testimony that Du-Jeff was "too far away and it would be difficult to uproot," that he had no intention of relocating, and from his affirmative response to the referee's inquiry, "You're testifying that you cannot relocate because of having your son here and your home in the Pittsburgh area?" The evidence in the record justified the unemployment authorities' inference that such relocation or commuting would have been necessary to claimant's continued employment.

We emphasize that our decision here is based on the *evidence in the record;* although Womeldorf has contended that the actual circumstances are otherwise, those claims are no more than allegations which appear only in an affidavit accompanying Womeldorf's request that the board reconsider its decision. That information is not part of the record in this case, and we cannot consider it.

We cannot hold as a matter of law that the board erred in concluding that the necessity of relocating,[3]

---

[3] We recognize that a need for relocation was not considered good cause in *Shaw v. Unemployment Compensation Board of Review,* 46 Pa. Commonwealth Ct. 452, 406 A.2d 608 (1979), because

634

or excessive daily commuting, constituted good cause for claimant to decline reassignment.

Accordingly, we affirm.

ORDER

Now, June 11, 1981, the March 24, 1980 order of the Unemployment Compensation Board of Review, decision No. B-182276, is affirmed.

claimant admitted the suitability of work requiring a 200-mile round trip commute by accepting it and continuing in it for 3 months, nor in *Sloss v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 528, 367 A.2d 803 (1976), again on suitability grounds, because claimant had accepted work in California, but after one month returned to Pennsylvania rather than relocate his family, nor in *Keisling v. Unemployment Compensation Board of Review*, 198 Pa. Superior Ct. 345, 181 A.2d 717 (1962), because claimant knew at the time he accepted employment that he would be required to relocate in a short time.