Louise A. Schachte, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs September 12, 1984, to Judges WILLIAMS, JR., CRAIG and DOYLE, sitting as a panel of three.

*Albert C. Ondrey,* for petitioner.

*Richard F. Faux,* Associate Counsel, with him, *Charles Hasson,* Deputy Chief Counsel, for respondent.

Opinion by Judge Williams, Jr., November 29, 1984:

Louise A. Schachte (claimant) has appealed from an order of the Unemployment Compensation Board of Review (Board) denying her benefits. The Board concluded that she had quit her previous job without cause of a "necessitous and compelling" nature, and that, consequently, she was ineligible for benefits by force of Section 402(b) of the Unemployment Compensation Law (Law).[1]

Louise Schachte last worked as a horse groom for Justadun Farms (Justadun), having been hired on July 1, 1982. At the time Justadun hired the claimant it also hired her husband as a groom. Each of them was to be paid a gross salary of $185 per week. The Schachtes resided forty miles from their place of employment; consequently, they had to travel eighty miles a day to get to and from work. That trip they made together in a truck they owned.

On May 9, 1983, the claimant's husband was discharged by Justadun, but under circumstances that did not disqualify him from receiving unemployment benefits. On May 13, 1983, Mrs. Schachte voluntarily terminated her employment. Soon thereafter she applied for unemployment benefits, alleging in her application that she had quit her job at Justadun because the expenses of daily travel, to and from work, were too great for her salary alone.

Mrs. Schachte's application for benefits was denied by the Office of Employment Security, based on its determination that she had voluntarily left her job without cause of a necessitous and compelling nature. That determination, however, was reversed by a referee. The referee found that Justadun had hired the

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b).

Schachtes "as a team," and that the discharge of the husband had the effect of breaching the contract of employment under which the claimant herself worked. According to the referee, those facts alone were enough to give Mrs. Schachte valid grounds for quitting. As a further basis for this decision, the referee found that the claimant, without her husband joining her in the trip to and from work, could not bear the expenses of that trip on her salary.

In the proceedings before the referee, the claimant and her husband both appeared as witnesses; however, the only testimony of any relevance came from the claimant. The employer did not appear at all. In the course of her testimony, Mrs. Schachte stated that she and her husband had been hired "as a team" to groom horses. That statement appears to be the sole basis for the referee's finding in that regard.

According to Mrs. Schachte, her *net* income, after tax deductions, was $150 a week. She submitted to the referee a list of various expenses which, when totaled, almost equaled her annual salary at Justadun. The referee, by some accounting method that is not clear, determined that if the claimant had the additional expense of traveling to and from work alone, she would be left with about $100 a month from her salary. It appears, however, that the calculations of both the claimant and the referee included expenses which are of a personal or household nature, and are not elements in the expense of traveling between home and work.[2] Indeed, neither in the referee's findings nor in Mrs. Schachte's evidence, is there any indication of what that travel expense would have been, even

---

[2] In her calculations, the claimant included such items as the cost of a new engine for the family truck, food expenses, and Blue Cross-Blue Shield insurance for her and her husband. The referee included the insurance "and expenses."

if the claimant had to drive the distance. As to what other means of transportation might have been available to the claimant, no inquiry was made by the referee, and no information was provided.

Justadun filed an appeal from the referee's decision. Attached to the appeal form was a letter in which the employer disputed, among other things, the referee's finding that the Schachtes had been hired as a team. By an order dated September 12, 1983, the Board reversed the referee's decision; and denied benefits to the claimant. Although it found that the claimant had quit her job because of the travel expense, the Board concluded that such did not, under the circumstances, present cause of a necessitous and compelling nature. In so concluding, the Board decided: (1) that the claimant had not attempted to find someone with whom she could ride to work or share the expense of travel; and (2) that the claimant's husband could contribute travel money from *his unemployment benefits* or from *his wages if he found a new job.* The Board did not adopt the referee's finding that the claimant and her husband had been hired as a team.

In the claimant's appeal to this Court, her first assertion is that the Board arbitrarily, and hence erroneously, disregarded the referee's finding that the claimant and her husband had been hired as a team. To support that argument she relies on the plurality opinion of our state Supreme Court in *Treon v. Unemployment Compensation Board of Review,* 499 Pa. 455, 453 A.2d 960 (1982), in which it was stated that the Board cannot ignore a referee's findings when they are supported by "overwhelming evidence." It is our conclusion that *Treon* does not validate the claimant's argument. For one thing, it is doubtful that we can call "overwhelming" the evidence upon which the referee based his finding that the claimant and her hus-

band were hired as a team. Furthermore, aside from a question about the degree of evidentiary support, there was a completely independent reason for the Board to disregard the above finding: The claimant did not quit her job because an allegedly joint contract of hire had been breached by the employer. Neither in her application for benefits nor in her testimony before the referee, did the claimant assert such a reason. Although her testimony included a statement that she and her husband were hired as a team, she never altered her original representation that she had quit her job solely because of the relationship between the travel expense and her salary. The referee went beyond his proper function when he fashioned an additional motive for the claimant's action, and imputed it to her.

The claimant next argues that the Board erred in deciding that her husband's unemployment benefits, or the hypothetical wages of a job that he did not have, had to be considered a means by which the claimant could meet the increased expense of traveling to and from work. Regarding this part of the Board's decision, we must agree with the claimant. If the work-related expense of her job had so changed as to render the job itself unsuitable, that circumstance would not have been improved by the husband paying the expense from his pocket—even if he had the means to do so. We can ascertain no legal authority for the Board's looking to the husband's financial resources; and for it to do so under the circumstances of this case defies logic and practicality.

However, for a transportation problem to constitute "necessitous and compelling" cause for quitting a job, the problem must be one which produces real and substantial pressure to terminate the employment, and which would compel a reasonable person to do so.

*Treon; see Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977). In this connection, we have held that the claimant has the burden of proving that the transportation problem is so serious and unreasonable as to be virtually "insurmountable." *Mitchell v. Unemployment Compensation Board of Review,* 45 Pa. Commonwealth Ct. 291, 405 A.2d 598 (1979); *Simpson v. Unemployment Compensation Board of Review,* 39 Pa. Commonwealth Ct. 246, 395 A.2d 309 (1978). Before a transportation problem can be deemed "insurmountable," the claimant must demonstrate some unavailing effort to overcome it, including an investigation of other transportation possibilities. *Mitchell; Simpson.*

Since the instant claimant alleged increased transportation cost as her reason for quitting, it was incumbent upon her to show what that cost actually would have been. She provided no such evidence. And, even if she were referring to the cost of driving an automobile to and from work, the claimant presented no evidence as to the availability of, or her efforts to find, less expensive transportation alternatives. Given the existing record in this case, we must say that the claimant has not met her burden of proof. We must also note, however, that the claimant proceeded before the referee without an attorney; and that the referee never inquired as to the matters mentioned above. For that reason we conclude that this case should be remanded to give the claimant an opportunity to present evidence on those matters, and for the compensation authorities to make findings and a decision based on such evidence.[3]

---

[3] In *Bennett v. Unemployment Compensation Board of Review,* 66 Pa. Commonwealth Ct. 455, 445 A.2d 258 (1982), we held that where a claimant appears *pro se,* the referee should assist in developing the facts necessary for a proper decision.

ORDER

AND Now, the 29th day of November, 1984, the order of the Unemployment Compensation Board of Review at Docket No. B-222185 is hereby vacated; and the case is remanded for additional proceedings consistent with the annexed opinion.