IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David E. McClellan, Jr.,      :
      :
      Petitioner   :
      :
      v.      : No. 1361 C.D. 2017
      : Submitted: July 20, 2018
Unemployment Compensation   :
Board of Review,      :
      :
      Respondent :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK      FILED: December 13, 2018

David E. McClellan, Jr. (Claimant) petitions for review of the August 1, 2017 order of the Unemployment Compensation Board of Review (Board) that affirmed a referee's determination and held that Claimant is ineligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] For the following reasons, we vacate and remand.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b). Section 402(b) provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

Claimant was employed as a full-time delivery technician by Apria Healthcare (Employer) from February 2, 2015, to March 3, 2017, at a final rate of $14.25 per hour. Finding of Fact (F.F.) No. 1. Shortly after Claimant began working for Employer, the company relocated from Altoona to Dubois, Pennsylvania. F.F. No. 2.[2] Upon relocation, Employer provided Claimant with a company vehicle to reduce his transportation costs. F.F. No. 3. Claimant used this vehicle to commute to work for more than a year. *Id.* On February 15, 2017, Employer's general manager, Mark Pascarella, informed Claimant that he could no longer use the company vehicle for his commute. F.F. No. 4. Pascarella told Claimant that the last day he could use the company vehicle was March 3, 2017, which at the time was about two weeks away. F.F. No. 5.

Claimant did not find other transportation and effectively terminated his employment on March 3, 2017. On March 4, Claimant filed for unemployment compensation benefits, alleging that he was forced to resign from work due to transportation problems. By decision mailed April 12, 2017, the local service center determined that Claimant was ineligible for benefits under Section 402(b) of the Law, finding that although the loss of transportation was not Claimant's fault, he had not attempted to secure alternative means of commuting to work. On April 19, 2017, Claimant appealed the decision.

A referee held a hearing on May 11, 2017. Both Claimant and Employer participated via telephone. Claimant, acting *pro se*, testified that he wanted to stay with the company, but told Pascarella "[i]f there's nothing that can

---

[2] On his initial internet claim form, Claimant stated that when he began working with this company, Employer was located a block away from his residence. Claimant testified that Employer's relocation increased his commute to approximately 70 miles each way, 140 miles total. Notes of Testimony (N.T.), May 11, 2017, at 6.

be done or resolved by you know, March 3rd, March 3rd would be my last day." Notes of Testimony (N.T.) May 11, 2017, at 6. Claimant stated that Pascarella instructed him to submit his two weeks' notice if he wanted to continue working until March 3. N.T. at 6. Claimant testified that he did not "necessarily […] say [he] was quitting," but felt "forced to resign" and subsequently submitted his two weeks' notice. N.T. at 7

Throughout Claimant's testimony, he repeatedly stated that his lack of money and time prevented him from securing alternate transportation before March 3. For example, Claimant stated:

> [W]ith my job being 70 miles away, I just didn't have enough time. Two weeks was just not enough time to secure a vehicle and secure alternate transportation to this job.
>
> * * *
>
> [] And with two weeks' time, it was just-it wasn't enough time. *And I mean I didn't have enough money to get a vehicle*.
>
> * * *
>
> [] It just [sic]-*the two weeks' time was not enough time to save up the money to go buy a vehicle* to be the-with it being-it's not like it's down the street, you know. Its [sic] 70 miles from here. So I mean I couldn't even call somebody to say hey, could you take me to and back from work.
>
> * * *
>
> [] And yes, I did actually try to find vehicles. *I just didn't have the money at the time to go and buy one*. I actually got money saved up and got a vehicle a month later. And it took me a month to get a vehicle and two weeks just wasn't enough time.

N.T. at 6, 8, 9 (emphasis added).

Claimant maintained that despite his lack of money and time, he still made efforts to find transportation. Claimant testified that he arranged a second "personal meeting" with Pascarella following their February 15 discussion. N.T. at 6, 9. Claimant testified that he asked Pascarella if there was anything he could do to remain employed with the company because two weeks was not enough time for him to save the money to purchase a car. N.T. at 6, 10, 11-12. Claimant stated that Pascarella responded matter-of-factly, making clear to Claimant that the company vehicle would be taken on March 3 and that it was his responsibility to locate other transportation. N.T. at 6. Claimant also said that he spoke with his girlfriend about the possibility of her quitting her two jobs to allow Claimant to drive their shared vehicle to work, but they determined that this was not a feasible option. N.T. at 6.

Claimant also noted that he could not just purchase *any* car, because he needed a vehicle that would sustain a commute of approximately 140 miles each work day. N.T. at 6. Claimant testified that several weeks after his last day of employment, he was finally able to save the money to purchase a vehicle with his expected tax refund. N.T. at 8, 9. Claimant stated that he "hated leaving the company," and felt "pretty much tricked" into submitting his two weeks' notice. N.T. at 9, 13. Claimant testified that he was not given the opportunity to work after March 3, and he believed that submitting his resignation was the only way he could continue working at the company for the next two weeks. N.T. at 8.

Pascarella testified that Claimant would have been able to use the company vehicle once he arrived to work each day, but he could no longer take the car home due to the "logistics efficiency and operations of our Dubois location." N.T. at 10, 11. Pascarella said that when he informed Claimant that he would need

4

to provide his own transportation, Claimant responded that he would not be able to do that. N.T. at 11. Pascarella stated that Claimant could have continued working for Employer if he had gotten his own car before March 3. N.T. at 11. Pascarella acknowledged that Claimant arranged a second meeting with him to discuss the transportation issue. N.T. at 11. Pascarella stated:

> I informed [Claimant] again that as of that date, March 6, 2017, [he'd] have to provide [his] own transportation back and forth to work. *And that was the option on the table.* And that's when [Claimant] explained that [he] would not be able to do that.

N.T. at 11. (emphasis added).

Additionally, Pascarella presented no evidence to rebut Claimant's testimony that Pascarella required Claimant to submit his two weeks' notice to continue working until March 3.

The referee affirmed the local service center's determination that Claimant was ineligible for benefits under Section 402(b) of the Law. The referee's relevant findings of fact state:

> 5. The claimant was informed the last day he would have the company vehicle would be March 3, 2017.
>
> 6. The claimant was informed he would need to find his own transportation to and from work.
>
> 7. The claimant and his girlfriend only had one vehicle.
>
> 8. The claimant did not attempt to buy a vehicle before March 3, 2017.
>
> 9. The claimant did not think he had sufficient time of two weeks to find a vehicle.

10. The claimant did not contact the employer in regard to assistance with transportation before leaving the employment.[3]

11. The claimant did not request additional time to continue employment with transportation provided by the employer in order for him to secure appropriate transportation.

12. The claimant decided to voluntarily leave work instead of having his girlfriend leave her employment so he could have transportation to and from work.

Referee's Decision, 5/18/17, at 1-2.

The referee found that two weeks was enough time for Claimant to at least attempt to purchase a vehicle. Consequently, the referee determined that Claimant had not exercised reasonable efforts to maintain his employment. Therefore, the referee concluded that Claimant was ineligible for benefits under Section 402(b) of the Law.

Claimant appealed to the Board, arguing that he had made efforts to secure other transportation by attempting to purchase a car on two occasions. Claimant further asserted that he tried to communicate with Employer about possible solutions to solve his transportation problem but Employer was unwilling to work with him. Claimant also stated that he felt tricked and betrayed into resigning and

_____

[3] The referee did not address Pascarella's testimony acknowledging that Claimant asked for a second meeting to discuss his transportation problem, or Claimant's unrebutted testimony that he lacked the money to purchase a car, that the drive was too far of a distance for Claimant to request a ride, or that Claimant was compelled to submit his two weeks' resignation based on Pascarella's instruction.

questioned why Pascarella required him to submit his two weeks' notice in order to work until March 3.

By decision and order dated August 1, 2017, the Board affirmed the referee's decision and held that Claimant was ineligible for benefits under Section 402(b) of the Law.[4] The Board adopted and incorporated the referee's findings of fact and conclusions of law and further found Pascarella's testimony credible. Specifically, the Board emphasized Claimant's admission that he purchased a vehicle with his tax refund just weeks following his voluntary termination.

On appeal to this Court,[5] Claimant argues that the Board's finding that he failed to make reasonable efforts to resolve his transportation problem was not supported by substantial evidence. Claimant further contends that the Board failed to address his testimony concerning his lack of financial resources and his attempts to preserve his employment, specifically concerning the second meeting he arranged with Pascarella.

Under Section 402(b) of the Law, a person who voluntarily terminates his employment bears the burden of proving that necessitous and compelling cause existed for his resignation. *Oliver v. Unemployment Compensation Board of Review*, 29 A.3d 95, 97 (Pa. Cmwlth. 2011). A claimant can demonstrate necessitous and compelling cause by proving:

---

[4] The Board is the ultimate fact-finder in unemployment compensation proceedings and is empowered to resolve all conflicts in the evidence, witness credibility, and the weight accorded to the evidence. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008).

[5] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Owoc v. Unemployment Compensation Board of Review*, 809 A.2d 441, 443 (Pa. Cmwlth. 2002).

7

> (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) claimant acted with ordinary common sense; and (4) claimant made a reasonable effort to preserve his employment.

*Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

The Board determined that Claimant failed to demonstrate that he attempted to secure alternate transportation before his termination. However, during his testimony, Claimant stated four times that he did not have enough money at the time to purchase a vehicle.[6] N.T. at 8, 9, 10. Claimant additionally explained that he did not try to rent or lease a vehicle "because [he] wasn't able to." N.T. at 10. Claimant testified that he purchased a vehicle nearly a month after his employment ended when he got his tax refund and that it took him that long to save up enough money to buy a car. N.T. at 8. Neither the referee nor the Board acknowledged that testimony.

Nevertheless, the Board found that Claimant made no attempts to rent, lease, or buy a car before March 3, and therefore concluded that Claimant had not made reasonable efforts to maintain his employment. Because the Board did not

---

[6] We note that the referee did not ask Claimant any questions about his financial situation. Pursuant to Section 101.21 of Title 34 of the Pennsylvania Code, a referee must "give every assistance compatible to [unrepresented] part[ies] without the impartial discharge of its official duties." 34 Pa. Code §101.21. "It is incumbent upon the referee, as representative or agent for the Board, to fairly develop the facts of each case to insure that" just decisions are issued. *Robinson v. Unemployment Compensation Board of Review*, 431 A.2d 378, 380 (Pa. Cmwlth. 1981). Here, Claimant's financial status was highly relevant to determine whether Claimant has met his burden under Section 402(b) of the Law.

issue any findings regarding Claimant's alleged lack of financial resources, the Board appears not to have considered whether Claimant had the financial ability to purchase, rent or lease a vehicle.[7]  We conclude that such a finding is essential for purposes of meaningful appellate review.[8]

---

[7] In its decision, the Board contends that Claimant could not satisfy his burden of proof because he was able to purchase a vehicle with his tax refund just weeks after his final day of employment.  In emphasizing this fact, the Board disregards Claimant's testimony that it took him nearly a month to save up enough money to purchase a vehicle.  Claimant's ability to save up enough money to purchase a vehicle nearly one month after his termination does not establish Claimant's ability to buy a car within the final two weeks of his employment.

[8] *See Rettan v. Unemployment Compensation Board of Review*, 325 A.2d 646, 647 (Pa. Cmwlth. 1974), where we held that a claimant does not "voluntarily" terminate her employment when she resigns because she cannot procure a condition of employment due to her own financial inability.  In *Rettan*, the supervisor insisted that Rettan, a machine operator, could not return to work until she found her misplaced glasses or purchased new ones due to safety concerns.  The supervisor afforded Rettan several days to obtain a new pair of glasses but ultimately terminated her when the several days had passed and she had not located the glasses and did not have the money to buy a new pair.  We reversed the Board's decision to deny benefits and held that without any evidence to "refute [Rettan's] contention that her financial situation prevented her from obtaining needed glasses, we cannot conclude that [. . .] [she] left her employment voluntarily when her employer understandably insisted glasses as a prerequisite for continued employment." *Id*. at 647.  This Court further stated:

> 'Voluntarily' and 'involuntarily' are antonymous and therefore irreconcilable words, but the words are merely symbols of ideas, and the ideas can be readily reconciled.  Willingness, willfulness, volition, intention reside in 'voluntarily', but the mere fact that a worker wills and intends to leave a job does not necessarily and always mean that the leaving is voluntary.  Extraneous factors, the surrounding circumstances, must be taken into the account, and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was in fact involuntary.
>
> * * *
>
> 'When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances compel the

9

We have long held that appellate review is not possible when the Board makes no findings regarding a vital issue. *Dick v. Unemployment Compensation Board of Review*, 417 A.2d 841, 844 (Pa. Cmwlth. 1980). The Board may refuse to accept testimony from any witness, on any issue, even when the testimony is uncontradicted. *Treon v. Unemployment Compensation Board of Review*, 453 A.2d 960, 962 (Pa. 1982). However, the Board commits a "fatal error" when it fails to address "certain issues raised by the claimant *and not refuted by the employer*." *Whisner v. Unemployment Compensation Board of Review*, 446 A.2d 336, 339 n.6 (Pa. Cmwlth. 1982) (emphasis in original).

Additionally, Claimant argues that the Board's finding that Claimant did not request assistance from Employer is not supported by substantial evidence. F.F. No. 10.[9] In this regard, we note that Pascarella's credible testimony confirms that, at Claimant's request, he met a second time with Claimant and discussed the transportation issue. Regarding that second meeting, Pascarella stated, "I informed [Claimant] *again* that as of that date, March 6, 2017, [he'd] have to provide [his] own transportation back and forth to work." N.T. at 11. (emphasis added). It is

decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it.' (citation omitted in original).

*Rettan*, 325 A.2d at 648.

We concluded that "[a]lthough it is true that Rettan was given a choice of obtaining glasses and retaining her employment or going without glasses and being unable to work at [employer], we do not conclude on this record that her failure to obtain glasses because of a financial inability constituted voluntarily leaving work." *Id.* at 647.

[9] The Board found that "[t]he claimant did not contact the employer in regard to assistance with transportation before leaving the employment." F.F. No. 10.

clear that Claimant requested a second meeting with Pascarella at which they discussed Employer's decision to discontinue Claimant's use of the company vehicle.

Because Pascarella's testimony corroborates Claimant's testimony that he requested a second meeting at which he again raised the transportation issue, substantial evidence exists to demonstrate that Claimant took some action to resolve his transportation problem with Employer. The Board erred in disregarding this testimony.[10]

We have previously held that transportation problems can constitute necessitous and compelling cause for leaving employment. *Lee v. Unemployment Compensation Board of Review*, 401 A.2d 12, 13 (Pa. Cmwlth. 1979). To establish necessitous and compelling cause, the claimant must demonstrate that the transportation inconvenience created an insurmountable problem. *Shaw v. Unemployment Compensation Board of Review*, 406 A.2d 608, 609 (Pa. Cmwlth. 1979). The claimant must also establish that he took reasonable steps to remedy the transportation issue before severing the employment relationship. *Correa v. Unemployment Compensation Board of Review*, 374 A.2d 1017, 1020 (Pa. Cmwlth. 1977).

In *J.C. Penney Company, Inc. v. Unemployment Compensation Board of Review*, 457 A.2d 161, 162 (Pa. Cmwlth. 1983), the employer relocated its offices and offered the claimants continued employment. To resolve their transportation

---

[10] The Board is entitled to disbelieve a claimant's testimony, even when such testimony is uncontradicted. *Treon*, 453 A.2d at 962. The Board may also accept or reject testimony whether or not it is corroborated by other evidence of record. *Chapman v. Unemployment Compensation Board of Review*, 20 A.3d 603, 608 (Pa. Cmwlth. 2011). However, the Board must render findings concerning issues that are presented by the claimant and are not disputed by the employer. *Whisner*, 446 A.2d at 339 n.6.

11

problems, the claimants explored alternatives such as, driving, carpooling, and riding the highspeed line; however, in some cases, work commutes increased by 32 miles and daily transportation costs rose to $12.00. This Court determined that claimants "need not actually spend an additional 10% of a weekly salary in transportation costs in order to determine that the expenditure is not economically feasible." *J.C. Penney*, 457 A.2d at 163. We further held that a claimant must only take "reasonable steps" to overcome a transportation problem, and is not required to employ "unworkable" alternatives.[11]

In this case, the Board failed to address testimony by both parties concerning Claimant's second meeting with Pascarella and whether Claimant's options were "economically feasible." *J.C. Penney*, 457 A.2d at 163. Because such findings are necessary for meaningful appellate review, we are compelled to vacate and remand to the Board for additional findings of fact addressing Claimant's financial ability to purchase a car within that two-week period and Claimant's second request to meet with Pascarella and discuss his transportation options.

_____
MICHAEL H. WOJCIK, Judge

---

[11] Compare *Lee v. Unemployment Compensation Board of Review*, 401 A.2d 12, 13 (Pa. Cmwlth. 1979). In *Lee*, the employer relocated a distance of 11 miles from its former office. The claimant's husband offered to drive her each day to either work or to the bus stop (located 1.5 miles away), and alternatively suggested purchasing a vehicle for the claimant so that she could drive herself to work. Because the claimant did not utilize any of her husband's proposed options before severing her employment relationship, we affirmed the Board's determination that she was ineligible for benefits.

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David E. McClellan, Jr.,                    :
                                            :
                    Petitioner              :
                                            :
          v.                                : No. 1361 C.D. 2017
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                                            :
                    Respondent              :

O R D E R

AND NOW, this 13th day of December, 2018, the order of the Unemployment Compensation Board of Review, dated August 1, 2017, is VACATED, and this matter is REMANDED for additional findings of fact in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge